IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:11-CV-28-D

| | | |
|---|---|---|
| NACCO MATERIALS HANDLING GROUP, INC., d/b/a YALE MATERIALS HANDLING CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| THE LILLY COMPANY, | ) ) ) | |
| Defendant. | ) | |

On February 22, 2011, NACCO Materials Handling Group, Inc., d/b/a Yale Materials Handling Corporation ("Yale" or plaintiff), filed suit against The Lilly Company ("Lilly" or defendant) [D.E. 1]. Yale alleges that Lilly accessed Yale's secure website without authorization and accessed proprietary information, which was stored on computers in Ohio, Illinois, and Washington. Yale claims Lilly has caused it competitive injury and seeks damages, injunctive relief, and disgorgement of profits. On March 25, 2011, Lilly filed a motion to dismiss or transfer venue, arguing that this court lacks personal jurisdiction over it [D.E. 13]. Lilly, however, admits that personal jurisdiction and venue would be proper in the United States District Court for the Western District of Tennessee. On April 18, 2011, Yale responded in opposition to the motion to dismiss or transfer venue [D.E. 23]. On April 27, 2011, Lilly replied [D.E. 26]. As explained below, the court grants Lilly's motion to transfer venue, and transfers the action to the United States District Court for the Western District of Tennessee. In light of this ruling, the court declines to address plaintiff's other motions [D.E. 19–21].

I.

When a defendant challenges the court's power to exercise personal jurisdiction under Rule 12(b)(2), plaintiff bears the burden of establishing jurisdiction. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). Yale must make a prima facie showing, and the court construes the pleadings and affidavits in the light most favorable to a Yale. Id. The pleadings and affidavits, taken in the light most favorable to Yale, establish the following facts.

Yale is a Delaware corporation, with headquarters in Cleveland, Ohio, that manufactures and sells lift trucks and parts through Authorized Yale Dealers ("Yale Dealer"). V. Compl. ¶¶ 2–3, 13. Yale also maintains a Secure Yale Dealer Resource Site ("Dealer Resource Site" or "website"), which allows Yale Dealers to access a wide range of proprietary information. Id. ¶¶ 5–7. Access to the website is restricted to Yale Dealers and is password protected. Id. ¶ 8. The first time a user attempts to log in to the Dealer Resource Site with their user ID and password, the user must review and accept the terms of use contained in a clickwrap[1] license agreement. Sattler Decl. ¶ 12. Yale's license agreement in 2007 and 2008 contained the following language:

> This License and any disputes arising under or related to this License or to this Web Site will be governed by the laws of North Carolina without reference to conflict of law principles. Any such dispute shall be resolved exclusively in the state or federal courts located in North Carolina, County of Pitt.

Id. ¶ 9 & Ex. B. Users are not required to review and accept the terms of use for the license agreement every time they access the Dealer Resource Site. See id. ¶¶ 11–13; see also Robertson Aff. ¶¶ 4–6. However, if Yale makes changes to the license agreement, a user is required to accept the revised license agreement in order to complete the log-in process. Sattler Decl. ¶ 13. Yale keeps

---

[1] A clickwrap agreement is a dialogue box that appears on a webpage and requires the user to agree to certain terms before allowing the user to proceed. See Specht v. Netscape Commc'n Corp., 306 F.3d 17, 21–22 & n.4 (2d Cir. 2002).

2

a record of the most recent occasion each user has accepted the license agreement. Id.

Before January 2008, Lilly was a Yale Dealer with locations in Arkansas, Missouri, Mississippi, and Tennessee. V. Compl. ¶ 19. In January 2008, Lilly was terminated as a Yale Dealer when Lilly sold the assets in its Nashville, Tennessee facility to KMH Systems, Inc ("KMH"), another Yale Dealer. See Clarke Aff. ¶ 5; Sattler Decl. ¶ 7. Lilly is now a lift truck dealer for several of Yale's competitors. V. Compl. ¶ 20. When Lilly was terminated as a Yale Dealer, Yale cancelled Lilly's user IDs and passwords for accessing the Dealer Resource Site. See Sattler Decl. ¶ 13a–d. According to Yale's records, the last time a Lilly employee accepted Yale's revised license agreement was on August 23, 2007, when Lilly was still a Yale Dealer. Id.; see Opp'n Mot. Dismiss 13. Despite terminating Lilly's access to the website, Yale alleges that Lilly has been improperly accessing the Dealer Resource Site. V. Compl. ¶ 9.

Yale claims that from November 1, 2010, through December 20, 2010, Lilly entered Yale's website by using the user ID and password assigned to Eddie Wolfe, a KMH employee. Id. ¶¶ 9–10; Sattler Decl. ¶ 13d; Opp'n Mot. Dismiss 2. Yale alleges that Lilly accessed computers located in Ohio, Illinois, and Washington. See V. Compl. ¶¶ 10, 53. Until January 2008, Wolfe was a Lilly employee. Sattler Decl. ¶ 13d. On January 18, 2008, KMH hired Wolfe and Yale issued Wolfe a new user ID and password. Id. After Yale discovered that Lilly was using Wolfe's user ID to access the website, Yale cancelled Wolfe's access in December 2010. Id. According to Yale's records, the last time Wolfe accepted the revised license agreement was on January 20, 2010. Id.[2]

On February 22, 2011, Yale filed suit against Lilly, alleging violations of federal law and

---

[2] Although Yale attempts to cast doubt on the identity of the person who accepted the revised license agreement on January 20, 2010, Yale has no evidence that it was a Lilly employee. See Sattler Decl. ¶ 13a–d; see Opp'n Mot. Dismiss 2, 13.

3

North Carolina, Ohio, Illinois, Washington, Tennessee, Alabama, Mississippi, and New York law [D.E. 1]. On March 25, 2011, Lilly filed a motion to dismiss or transfer venue, arguing that this court lacks personal jurisdiction over it [D.E. 13]. On April 5, 2011, Yale filed a motion to expedite discovery, a motion for a preliminary injunction, and a motion for a preliminary injunction hearing and consolidated trial on the merits [D.E. 19–21]. On April 18, 2011, Yale responded in opposition to Lilly's motion to dismiss or transfer venue [D.E. 23]. On April 27, 2011, Lilly replied [D.E. 26]. On May 2, 2011, Lilly responded in opposition to Yale's motions for a preliminary injunction, consolidated trial, and expedited discovery [D.E. 29]. On May 12, 2011, Yale replied [D.E. 34]. On May 13, 2011, the parties submitted a joint Rule 26(f) Report [D.E. 35].

Lilly is a Tennessee corporation with headquarters in Memphis, Tennessee. V. Compl. ¶ 14. Lilly does not have any offices, facilities, employees, or agents in North Carolina. Clarke Aff. ¶ 7. Likewise, Lilly does not have any real or personal property, including computers or servers, in North Carolina. Id. ¶¶ 7–8. Lilly does not have any customers or ongoing contractual relationships in North Carolina. Id. ¶¶ 4, 9.[3] Therefore, Lilly claims it is not subject to personal jurisdiction in North Carolina. Yale responds that personal jurisdiction is proper for two reasons. First, Yale claims that Lilly has waived any objection to personal jurisdiction because the license agreement on Yale's website contained a North Carolina forum selection clause. See Opp'n Mot. Dismiss 8–15. Second, Yale argues that by repeatedly accessing Yale's Dealer Resource Site, Lilly is subject to specific jurisdiction in North Carolina. See id. at 15–23. Lilly replies that it is not bound by the forum selection clause because Yale cannot establish Lilly saw or agreed to Yale's revised license agreement in effect in 2010. See Mem. Supp. Mot. Dismiss 7–11; Reply Br. 1–4. As for specific

---

[3] Yale admits that Lilly is not subject to general personal jurisdiction in North Carolina. See Opp'n Mot. Dismiss 15.

4

jurisdiction, Lilly argues it does not exist because none of the alleged events occurred in North Carolina and Lilly's alleged actions were not "directed" at North Carolina. See Reply Br. 4–5 (noting that the computers were located in Ohio, Illinois, and Washington).

II.

Personal jurisdiction is typically determined before venue. However, when sound justification exists for doing so, a court may consider venue first. See, e.g., Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979). A court need not have personal jurisdiction over a defendant to transfer a case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962); O'Neal v. Hicks Brokerage Co., 537 F.2d 1266, 1268 (4th Cir. 1976); Koehring Co. v. Hyde Constr. Co., 324 F.2d 295, 297–98 (5th Cir. 1963); Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514, 515–16 (4th Cir. 1955). Questions regarding transfer under section 1404(a) are committed to the sound discretion of the district court. See, e.g., Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991). Under 28 U.S.C. § 1404(a), a district court may transfer a case for the convenience of the parties and witnesses, in the interest of justice, to any other district where the action might have been brought. See 28 U.S.C. § 1404(a). Additionally, a district court has the power to dismiss an action, or if it is in the interest of justice, transfer an action if venue is improper in the transferor court. See 28 U.S.C. § 1406(a). Even if venue is proper in the transferor court, transfer may be made under section 1406(a) for any reason which constitutes an impediment to a decision on the merits. See, e.g., Porter v. Groat, 840 F.2d 255, 257–58 (4th Cir. 1988); Jenkins v. Albuquerque Lonestar Freightliner, LLC, 464 F. Supp. 2d 491, 494 (E.D.N.C. 2006).

Courts consider numerous factors in determining whether transfer is appropriate. These factors include the convenience of the witnesses, where the events occurred that gave rise to the

action, the residences of the parties, plaintiff's initial choice of forum, the availability of compulsory process, and the law which will govern the dispute. See Collins v. Straight, Inc., 748 F.2d 916, 921–22 (4th Cir. 1984); Jenkins, 464 F. Supp. 2d at 493–94; Hardee's Food Sys., Inc. v. Rosenblatt, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998). Plaintiff's choice of forum is ordinarily accorded considerable weight, but that weight is lessened when the conduct giving rise to the complaint did not occur in the forum. See, e.g., Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F. Supp. 2d 741, 743 (E.D. Va. 2003); Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002). An agreement as to the appropriate forum, if such an agreement exists, is a factor for the court's consideration, but it is not dispositive. See Stewart Org., 487 U.S. at 30–32; Brock, 933 F.2d at 1258.

The events giving rise to the complaint occurred in Tennessee and the computers Lilly allegedly accessed are located in Ohio, Illinois, and Washington. Thus, the witnesses regarding Lilly's alleged conduct are primarily in those states. Moreover, although Yale claims that many of its witnesses are located in North Carolina, the focus of this factor is qualitative, not quantitative. See 15 Charles Alan Wright et al., Federal Practice & Procedure § 3851 (3d ed. 2007). Furthermore, this court cannot compel non-party witnesses, such as KMH employees in Tennessee, to attend a trial in this district. See, e.g., Fed. R. Civ. P. 45(c)(3)(A)(ii); 15 Wright et al., Federal Practice & Procedure § 3851 ("Often cited as the most important factor . . . is the convenience of witnesses, most particularly non-party witnesses who are important to the resolution of the case."). Additionally, because the conduct giving rise to the complaint did not occur in North Carolina, Yale's choice of forum is accorded less weight. Likewise, even assuming Lilly agreed to the forum selection clause (an issue that is hotly contested), this agreement is not dispositive. As for the residences of the parties, both are corporate citizens of other states, and although Yale resides in

6

Case 4:11-cv-00028-D   Document 37   Filed 05/25/11   Page 6 of 8

North Carolina, Lilly does not. Yale notes that several of its claims are grounded in North Carolina law. However, this argument carries little weight where, as here, Yale has also brought claims under Tennessee, Ohio, Illinois, Washington, Alabama, Mississippi, and New York law. Finally, venue is proper in the United States District Court for the Western District of Tennessee. See 28 U.S.C. § 1391(a). Therefore, in light of the entire record and for the convenience of parties and witnesses, and in the interest of justice, transfer is appropriate under section 1404(a).

Alternatively, even if venue is proper in this district, transfer may also be appropriate under section 1406(a) in light of the potential impediment to a decision on the merits. See, e.g., Porter, 840 F.2d at 257; Jenkins, 464 F. Supp. 2d at 494–95. Yale's ability to obtain personal jurisdiction over Lilly in the Eastern District of North Carolina remains in serious doubt. See, e.g., Carefirst, 334 F.3d at 400 (concluding that defendant's internet activities, which had an effect in the forum state, were not sufficient to establish specific personal jurisdiction where defendant did not have an intent to target individuals in the forum state); Specht, 306 F.3d at 20 (refusing to enforce website license agreement where plaintiffs did not have notice and manifest assent to its terms); TradeComet.com LLC v. Google, Inc., 693 F. Supp. 2d 370, 374, 376 (S.D.N.Y. 2010) (enforcing forum selection clause contained in revised terms and conditions where plaintiff had notice and agreed to the new terms). Although Lilly disputes being subject to personal jurisdiction in the Eastern District of North Carolina, Lilly admits to such jurisdiction in the Western District of Tennessee. See Mot. Dismiss 1–2. Therefore, transfer is appropriate under 28 U.S.C. § 1406(a).

Having considered the entire record, the convenience of the parties and witnesses, and in the interest of justice, this dispute would best be resolved in the United States District Court for the Western District of Tennessee. Accordingly, the court grants defendant's motion to transfer venue. See 28 U.S.C. §§ 1404(a), 1406(a).

7

III.

Lilly's motion to transfer venue [D.E. 13] is GRANTED. Moreover, the court DECLINES to rule on plaintiff's other motions [D.E. 19, 20, 21]. The transferee court will resolve those motions. The action is transferred to the United States District Court for the Western District of Tennessee.

SO ORDERED. This 24 day of May 2011.

                                  JAMES C. DEVER III
                                  United States District Judge